**FILED**

MAY 0 5 2015 

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. **15CR 260** |
| | ) | |
| DAVID COLLETTI, | ) | Violations:   Title 18, United States Code, |
| RODERICK GROETZINGER, | ) |               Sections 1341 and 1343 |
| ANDREW VALLOZZI, | ) | |
| JAMES RITTENBERG, | ) | **JUDGE ALONSO** |
| SCOTT DARST, | ) | |
| THOMAS LONGHI, | ) | |
| FRANCIS BUONAURO Jr., and | ) | **MAGISTRATE JUDGE MASON** |
| MARYANN ROZENBERG | ) | |

<u>COUNT ONE</u>

The SPECIAL JANUARY 2014 GRAND JURY charges:

1.     At times material to this indictment:

        a.     The Victim Company brewed and sold a variety of beer brands in the United States and had offices located in Chicago, Illinois, and Milwaukee, Wisconsin. The Victim Company generally grouped its customer accounts into two categories: customers that sold and served beer on-premises, such as bars or restaurants, and customers that sold beer to be consumed off-premises, such as supermarkets.

        b.     In order to promote its beer products, the Victim Company contracted third-party vendors to organize and conduct events and promotions designed to market the Victim Company's beer brands. In order to receive payment from the Victim Company for these services, the vendors were required to submit an estimate of the costs of the event or promotion to the Victim Company prior to the date of the event. Once the estimate was approved, the Victim

Company assigned a purchase order number for the event. After the event or promotion took place, the vendors were required to submit an invoice listing the purchase order number for the event. After receiving the invoice, the Victim Company issued payments to the vendors.

       c.     Defendant DAVID COLLETTI was employed by the Victim Company from 1982 until 2013. During the course of his employment, COLLETTI held the titles of Senior Director of On-Premise National Accounts and Vice-President of On-Premise National Accounts. As part of his responsibilities, COLLETTI oversaw the marketing, promotion, and sale of beer relating to the on-premise accounts, including events and promotions held by third-party vendors. COLLETTI worked in both the Chicago and Milwaukee offices of the Victim Company.

       d.     Defendant ROD GROETZINGER controlled Beverage Industry Marketing Services, Inc., Beverage Industry Marketing Services, LLC, Rave Media, Events Marketing Network LLC, and Rare Beverages, collectively referred to as BIMS, which purported to provide marketing and event planning services.

       e.     Defendant ANDREW VALLOZZI controlled AVA Advertising, Inc., AVA Marketing and Communications, LLC, and Food and Beverage Network, Inc., collectively referred to as AVA, which purported to provide marketing and event planning services.

       f.     Defendants JAMES RITTENBERG and SCOTT DARST controlled Prime Promotions, Inc. and P&D Marketing, Inc., which purported to provide marketing and event planning services.

       g.     Defendant THOMAS LONGHI controlled Longhi Golf Operations, which purported to provide golf event planning services.

2

h.    Defendant FRANCIS BUONAURO, Jr. controlled F&B Marketing, which purported to provide marketing and event planning services.

i.    Defendant MARYANN ROZENBERG was an employee of the Victim Company from 1995 until 2008.  Beginning in 2008, ROZENBERG created, managed, and controlled Golden Logistics, d/b/a Golden Events and Promotions, which purported to provide marketing and events planning services to the Victim Company.

2.    Beginning no later than May 2003, and continuing until at least December 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID COLLETTI,
RODERICK GROETZINGER,
ANDREW VALLOZZI,
JAMES RITTENBERG,
SCOTT DARST,
THOMAS LONGHI,
FRANCIS BUONAURO Jr., and
MARYANN ROZENBERG,

defendants herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

3.    It was part of the scheme that defendants COLLETTI, GROETZINGER, VALLOZZI, RITTENBERG, DARST, LONGHI, BUONAURO, and ROZENBERG fraudulently obtained at least $7 million by making materially false and misleading representations in documents submitted to the Victim Company, including estimates and invoices, which documents falsely billed the Victim Company for fictitious promotional events and marketing services.  The fraudulent estimates and invoices were submitted in the names of the entities controlled by

3

GROETZINGER, VALLOZZI, RITTENBERG, DARST, LONGHI, BUONAURO, and ROZENBERG. Once the Victim Company issued payments as a result of the fraudulent estimates and invoices, the defendants used the Victim Company's money, for among other things, defendants' personal expenses, collectible firearms, international golf trips, hunting trips, investments in a hotel and bar, and an arena football team.

4.      It was further part of the scheme that defendants COLLETTI, GROETZINGER, VALLOZZI, RITTENBERG, DARST, LONGHI, BUONAURO, and ROZENBERG, for the purpose of fraudulently billing the Victim Company, prepared and caused to be prepared false estimates and invoices for fictitious marketing and promotional events and services that did not occur as stated in the estimates and invoices. Defendants knew that the fraudulent estimates and invoices falsely represented the specific date, location, cost, and type of event that was purportedly held on behalf of the Victim Company. Defendants knew that the events, as described in the false estimates and invoices, did not take place or that the costs were much less than represented to the Victim Company.

5.      It was further part of the scheme that defendants COLLETTI, GROETZINGER, VALLOZZI, RITTENBERG, DARST, LONGHI, BUONAURO, and ROZENBERG submitted and caused to be submitted to the Victim Company the false estimates and invoices, which defendants knew falsely billed the Victim Company for fictitious events or events that did not occur as stated in the estimates and invoices.

6.      It was further part of the scheme that defendant COLLETTI, as Senior Director of On-Premise National Accounts and Vice-President of On-Premise National Accounts, approved and caused to be approved numerous fraudulent estimates and invoices, which defendant

4

COLLETTI knew were false and knew billed the Victim Company for fictitious events and for actual events at a falsely inflated price.

7.     It was further part of the scheme that defendants COLLETTI, GROETZINGER, VALLOZZI, RITTENBERG, DARST, LONGHI, BUONAURO and ROZENBERG caused the Victim Company to issue payments to the entities controlled by defendants as a result of the false estimates and invoices.  Once the payments were made to GROETZINGER, RITTENBERG, DARST, LONGHI and BUONAURO, these defendants often arranged for COLLETTI to receive a portion of the payments.  When payments were made to VALLOZZI, VALLOZZI spent portions of those payments on common investment with COLLETTI.

BIMS

8.     It was further part of the scheme that defendants COLLETTI and GROETZINGER prepared, submitted, and caused to be prepared and submitted at least 30 false estimates and invoices to the Victim Company on behalf of BIMS and, as a result, obtained at least $1,000,000 from the Victim Company.  For example, on or about September 4, 2012, COLLETTI and GROETZINGER submitted and caused to be submitted to the Victim Company a fraudulent invoice that billed the Victim Company $28,730 for a purported promotional and training event held by BIMS at three casinos in Las Vegas, Nevada.  Defendants COLLETTI and GROETZINGER knew that no such event took place.

AVA

9.     It was further part of the scheme that defendants COLLETTI and VALLOZZI prepared, submitted, and caused to be prepared and submitted at least 20 false estimates and invoices to the Victim Company on behalf of AVA and, as a result, obtained at least $1,000,000

5

from the Victim Company. For example, on or about May 4, 2010, COLLETTI and VALLOZZI submitted and caused to be submitted to the Victim Company a fraudulent invoice that billed the Victim Company $48,500 for a purported promotional event, namely, a food and beer pairing event, held by AVA. Defendants COLLETTI and VALLOZZI knew that no such event took place.

### Prime Promotions and P&D Marketing

10. It was further part of the scheme that defendants COLLETTI, RITTENBERG, and DARST prepared, submitted, and caused to be prepared and submitted at least 50 false estimates and invoices to the Victim Company on behalf of Prime and P&D Marketing and, as a result, obtained at least $3,500,000 from the Victim Company. For example, on or about April 6, 2011, defendants COLLETTI, RITTENBERG, and DARST submitted and caused to be submitted to the Victim Company a fraudulent invoice that billed the Victim Company $93,825 for purported promotional events held by Prime Promotions at four different casinos. Defendants COLLETTI, RITTENBERG, and DARST knew that no such events took place.

11. It was further part of the scheme that on or about July 6, 2011, defendants COLLETTI, RITTENBERG, and DARST submitted and caused to be submitted to the Victim Company a fraudulent estimate that billed the Victim Company $48,100 for purported promotional events held by P&D Marketing at four different casinos. Defendants COLLETTI, RITTENBERG, and DARST knew that no such events took place.

### Longhi Golf

12. It was further part of the scheme that defendants COLLETTI and LONGHI prepared, submitted, and caused to be prepared and submitted at least 25 false estimates and

6

invoices to the Victim Company on behalf of Longhi Golf and, as a result, obtained at least $1,000,000 from the Victim Company. For example, on or about March 7, 2013, COLLETTI and LONGHI submitted and caused to be submitted to the Victim Company a fraudulent invoice that billed the Victim Company $34,500 for a purported golf outing and tournament for 100 players held by Longhi Golf, in Las Vegas, Nevada. Defendants COLLETTI and LONGHI knew that no such event took place.

F&B Marketing

13.     It was further part of the scheme that defendants COLLETTI and BUONAURO prepared, submitted, and caused to be prepared and submitted at least 10 false estimates and invoices to the Victim Company on behalf of F&B Marketing and, as a result, obtained at least $500,000 from the Victim Company. For example, on or about September 1, 2011, COLLETTI and BUONAURO submitted and caused to be submitted to the Victim Company a fraudulent invoice that billed the Victim Company $33,465 for purported promotional events held at certain flea markets in Florida and Arizona. Defendants COLLETTI and BUONAURO knew that no such events took place.

Golden Logistics

14.     It was further part of the scheme that defendants COLLETTI and ROZENBERG prepared, submitted, and caused to be prepared and submitted at least 8 false estimates and invoices to the Victim Company, on behalf of Golden Logistics, and as a result, obtained approximately $95,326 from the Victim Company. For example, on or about September 27, 2013, defendants COLLETTI and ROZENBERG submitted and caused to be submitted to the Victim Company a fraudulent invoice that billed the Victim Company $7,905 for a purported

promotional event held at a hotel in Rosemont, Illinois. Defendants COLLETTI and ROZENBERG knew that no such event took place.

15.　It was further part of the scheme that defendants COLLETTI, GROETZINGER, VALLOZZI, RITTENBERG, DARST, LONGHI, BUONAURO, and ROZENBERG did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purposes of those acts.

16.　On or about June 22, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID COLLETTI and
ANDREW VALLOZZI,

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an electronic ACH transfer request for the transfer of approximately $67,490 from the Victim Company to an ACH processor located in a different state, which transfer of funds represented a payment for an invoice submitted in the name of AVA dated May 4, 2010;

In violation of Title 18, United States Code, Section 1343.

<u>COUNT TWO</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about June 29, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANDREW VALLOZZI,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $48,500 from an account at U.S. Bank to an account at Town Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of Food Service Network, Inc. dated May 4, 2010;

In violation of Title 18, United States Code, Section 1343.

COUNT THREE

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.    Paragraphs 1 through 15 of Count One are incorporated here.

2.    On or about August 24, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

RODERICK GROETZINGER,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $87,000 from an account at U.S. Bank to an account at Suntrust Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of BIMS dated July 23, 2010;

In violation of Title 18, United States Code, Section 1343.

10

## COUNT FOUR

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about July 12, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

RODERICK GROETZINGER,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $89,000 from an account at U.S. Bank to an account at Suntrust Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of BIMS dated April 27, 2011;

In violation of Title 18, United States Code, Section 1343.

11

## COUNT FIVE

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about November 8, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RODERICK GROETZINGER,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $28,730 from an account at U.S. Bank to an account at Suntrust Bank, which transfer of funds represented a payment from the Victim Company for an invoice submitted in the name of BIMS dated September 4, 2012;

In violation of Title 18, United States Code, Section 1343.

COUNT SIX

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about March 29, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

RODERICK GROETZINGER,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $96,835 from an account at U.S. Bank to an account at Suntrust Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of BIMS dated February 15, 2013;

In violation of Title 18, United States Code, Section 1343.

13

<u>COUNT SEVEN</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about May 7, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES RITTENBERG and<br>
SCOTT DARST,

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be delivered by U.S. mail, according to the direction thereon, an envelope containing a check in the amount of $93,825 from the Victim Company for an invoice dated April 6, 2010, addressed to "Prime Promotions" at an address in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1341.

14

<u>COUNT EIGHT</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about March 14, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES RITTENBERG and
SCOTT DARST,

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $68,600 from an account at U.S. Bank to an account at Park National Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of P&D Marketing dated February 7, 2011;

In violation of Title 18, United States Code, Section 1343.

<u>COUNT NINE</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about May 6, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES RITTENBERG and
SCOTT DARST,

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be delivered by U.S. mail, according to the direction thereon, an envelope containing a check in the amount of $93,825 from the Victim Company for an invoice dated April 6, 2011, addressed to "Prime Promotions" at an address in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1341.

<u>COUNT TEN</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.        Paragraphs 1 through 15 of Count One are incorporated here.

2.        On or about October 20, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES RITTENBERG and<br>SCOTT DARST,

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be delivered by U.S. mail, according to the direction thereon, an envelope containing a check in the amount of $36,800 from the Victim Company for an invoice dated August 29, 2011, addressed to "Prime Promotions" at an address in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1341.

<u>COUNT ELEVEN</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.     Paragraphs 1 through 15 of Count One are incorporated here.

2.     On or about May 16, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES RITTENBERG and<br>SCOTT DARST,

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $96,250 from an account at U.S. Bank to another account at U.S. Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of P&D Marketing dated April 10, 2013;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWELVE

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about January 25, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### THOMAS LONGHI,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $37,580 from an account at U.S. Bank to an account at Stearns Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of Longhi Golf Operations dated November 15, 2010;

In violation of Title 18, United States Code, Section 1343.

19

## COUNT THIRTEEN

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about September 5, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### THOMAS LONGHI,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $36,135 from an account at U.S. Bank to an account at Stearns Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of Longhi Golf Operations dated July 29, 2012;

In violation of Title 18, United States Code, Section 1343.

20

<u>COUNT FOURTEEN</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about April 10, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

THOMAS LONGHI,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $34,500 from an account at U.S. Bank to an account at Stearns Bank, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of Longhi Golf Operations dated March 7, 2013;

In violation of Title 18, United States Code, Section 1343.

<u>COUNT FIFTEEN</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.    Paragraphs 1 through 15 of Count One are incorporated here.

2.    On or about November 2, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

FRANCIS BUONAURO Jr.,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $33,465 from an account at U.S. Bank to an account at Citizens Bank of Florida, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of F&B Marketing dated September 2, 2011;

In violation of Title 18, United States Code, Section 1343.

22

<u>COUNT SIXTEEN</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about December 12, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

FRANCIS BUONAURO Jr.,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $31,275 from an account at U.S. Bank to an account at Citizens Bank of Florida, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of F&B Marketing dated September 3, 2012;

In violation of Title 18, United States Code, Section 1343.

23

## COUNT SEVENTEEN

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.        Paragraphs 1 through 15 of Count One are incorporated here.

2.        On or about November 4, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

FRANCIS BUONAURO Jr.,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an interstate electronic signal for the wire transfer of approximately $31,860 from an account at U.S. Bank to an account at Citizens Bank of Florida, which transfer of funds represented a payment by the Victim Company for an invoice submitted in the name of F&B Marketing dated September 6, 2013;

In violation of Title 18, United States Code, Section 1343.

24

<u>COUNT EIGHTEEN</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.    Paragraphs 1 through 15 of Count One are incorporated here.

2.    On or about October 26, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARYANN ROZENBERG,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an electronic signal in the form of a credit card transaction processed through a server located in a different state, which represented a payment of approximately $6,905 by the Victim Company for an invoice submitted in the name of Golden Logistics dated October 11, 2011;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINETEEN

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.    Paragraphs 1 through 15 of Count One are incorporated here.

2.    On or about September 20, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MARYANN ROZENBERG,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an electronic signal in the form of a credit card transaction processed through a server located in a different state, which represented a payment of approximately $7,583 by the Victim Company for an invoice submitted in the name of Golden Logistics dated September 11, 2012;

In violation of Title 18, United States Code, Section 1343.

<u>COUNT TWENTY</u>

The SPECIAL JANUARY 2014 GRAND JURY further charges:

1.      Paragraphs 1 through 15 of Count One are incorporated here.

2.      On or about October 9, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARYANN ROZENBERG,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, namely, an electronic signal in the form of a credit card transaction processed through a server located in a different state, which represented a payment of approximately $7,905 by the Victim Company for an invoice submitted in the name of Golden Logistics dated September 27, 2013;

In violation of Title 18, United States Code, Section 1343.

27

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2014 GRAND JURY further alleges:

1.      Counts One through Twenty of this Indictment are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.      As a result of the offenses charged in Counts One through Twenty of this Indictment,

DAVID COLLETTI,
RODERICK GROETZINGER,
ANDREW VALLOZZI,
JAMES RITTENBERG,
SCOTT DARST,
THOMAS LONGHI,
FRANCIS BUONAURO Jr. and
MARYANN ROZENBERG,

defendants herein, shall forfeit to the United States any and all right, title, and interest they have in any property, real and personal, which is derived from proceeds traceable to the offenses in Counts One through Twenty.

3.      The interests of defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code, Section 2461(c), include but are not limited to approximately $7 million.

4.      If, as a result of any act or omission by the defendants, any of the forfeitable property described above:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the Court;

28

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without

difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).


A TRUE BILL:


_____

FOREPERSON


_____

UNITED STATES ATTORNEY


29